[No. F017271. Fifth Dist. Apr. 4, 1994.]

RONALD OWENS, Plaintiff and Appellant, v.
GIANNETTA-HEINRICH CONSTRUCTION COMPANY, Defendant and
Appellant.

COUNSEL

Walkup, Shelby, Bastian, Melodia, Kelly, Echeverria & Link and Paul V. Melodia for Plaintiff and Appellant.

Chinello, Auchard, Jones, Stewart & Strong, Paul Auchard and K. Poncho Baker for Defendant and Appellant.

## Opinion

**BIANCHI, J.\***—Plaintiff, Robert Owens (Owens), was injured in 1988 while working as a drywall installer for Elmer Elia Drywall (Elia), an independent subcontractor on a construction project for which defendant, Giannetta-Heinrich Construction Company (Giannetta), served as the general contractor. Owens filed a claim for workers' compensation benefits and eventually received a total of $84,801.55 from Elia's carrier, State Compensation Insurance Fund (State Fund). Owens also brought an action for damages against Giannetta alleging it had been negligent in its operation and supervision of the construction site. In its answer to the complaint, Giannetta alleged, inter alia, that Owens's injuries were caused by his own and Elia's negligence.

Prior to trial, State Fund filed an application for a lien against any settlement or judgment in the action in order to recover benefits it had paid to or on behalf of Owens. State Fund later assigned the lien to Giannetta's liability carrier for $28,000.

A jury subsequently found by special verdict that Giannetta had exercised reasonable care to maintain the work site in a safe condition. However, it also found special precautions had not been taken to protect against a peculiar risk of injury created by the work Elia had been hired to perform. The jury found Owens had suffered economic and noneconomic damages totaling $447,305.27 and $37,500, respectively.[1] And it apportioned fault 65 percent to Owens, 20 percent to Elia, and 15 percent to Giannetta.

Following a hearing and further briefing, the court concluded Giannetta was liable to Owens for 35 percent of his economic damages ($158,077.63) and 15 percent of his noneconomic damages ($5,625) for a total of $163,702.63. It granted a lien against the judgment for benefits paid but concluded Owens was first entitled to recover a portion of his attorney fees as an offset against the lien on the ground that State Fund (as the original lienholder) was the passive beneficiary of a "common fund" created by Owens's efforts in obtaining the judgment against Giannetta. The court fixed the attorney fees at one-third the amount of the lien, or $28,267.18, leaving a balance on the lien of $56,534.37 which was credited to Giannetta (as State Fund's assignee). Thus, the net amount of the judgment against Giannetta was $107,168.26 ($163,702.63 minus $56,534.37) plus costs and interest. Giannetta filed a timely appeal from the judgment.

---

*Retired judge of the Kern Superior Court sitting under assignment by the Chairperson of the Judicial Council.

[1]The parties later stipulated Owens suffered additional economic damages of $4,345.11, for a total of $451,650.38.

In its original briefing, Giannetta challenged only the court's award of attorney fees. It contended Owens was not entitled to recover the fees because he failed to give Elia and State Fund timely notice of his suit against Giannetta, and because Owens's judgment against Giannetta did not create a common fund from which Elia or State Fund received a benefit.[2]

We subsequently requested supplemental briefing as to whether Owens's recovery against Giannetta was precluded by the Supreme Court's recent decision in *Privette* v. *Superior Court* (1993) 5 Cal.4th 689 [21 Cal.Rptr.2d 72, 854 P.2d 721], holding an employee of an independent contractor injured by the contractor's negligence may not recover for his injuries under the doctrine of peculiar risk from the person who hired the contractor. Both Giannetta and Owens provided supplemental briefing on this issue.

### DISCUSSION

1.  *The Privette Decision.*

An employee who suffers a work-related injury may recover workers' compensation benefits from his or her employer without regard to the negligence of either party. (Lab. Code, § 3600.)[3] Where the conditions of compensation are met, these benefits constitute the injured worker's exclusive remedy against the employer. (§§ 3601, 3602.) However, when the employee's injuries are caused in whole or in part by a third party, the employee's recovery of workers' compensation benefits does not affect his or her right of action against the third party for damages proximately caused by its negligence. (§ 3852.)

■ The doctrine of peculiar risk creates an additional form of third party liability based not on the third party's own negligence but on its relationship to the party at fault. Under the doctrine, a person who hires an independent contractor to perform work that is inherently dangerous can be held vicariously liable for injuries to others caused by the contractor's negligent performance of the work. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at pp. 691-696.) Among other things, the doctrine seeks to more fairly allocate the risk of loss from the hapless victim of the contractor's negligence to the person for whose benefit the contractor's work was performed. (*Id.* at p.

---

[2]Owens cross-appealed "with respect to the Court's computation of noneconomic damages and the method followed in crediting the worker's [*sic*] compensation lien against the jury's damage verdict." He does not address these issues in his respondent's brief, but limits his discussion to the question of attorney fees raised by Giannetta. Therefore, the issues may be deemed to have been abandoned. (*Rossiter* v. *Benoit* (1979) 88 Cal.App.3d 706, 710-711 [152 Cal.Rptr. 65].)

[3]All future statutory references are to the Labor Code.

694.) Accordingly, an innocent bystander or neighboring landowner injured by the contractor's negligent conduct can recover from the third party who hired the contractor as well as from the contractor itself. The third party, in turn, is entitled to equitable indemnity from the negligent contractor. (*Id.* at pp. 695, 701.)

Until recently, the right to recover under the doctrine of peculiar risk has also been extended to the contractor's own employees injured on the job. However, in *Privette,* the Supreme Court held recovery in such cases is precluded by the exclusive remedy provisions of the workers' compensation scheme which prevent a third party from seeking equitable indemnity from the independent contractor responsible for the employee's injuries. (5 Cal.4th at p. 701.) It also found the policies underlying the workers' compensation system serve the same purposes as those which have been applied to support imposition of peculiar risk liability. ██ Consequently, the court concluded: "When, as here, the injuries resulting from an independent contractor's performance of inherently dangerous work are to an employee of the contractor, and thus subject to worker's compensation coverage, the doctrine of peculiar risk affords no basis for the employee to seek recovery of tort damages from the person who hired the contractor but did not cause the injuries." (5 Cal.4th at p. 702.)

██ However, peculiar risk is not exclusively a form of vicarious liability.[4] It may arise as a form of direct liability if the person who hires an independent contractor "(a) fails to provide in the contract that the contractor shall take such precautions, or [¶] (b) fails to exercise reasonable care to provide in some other manner for the taking of such precautions." (Rest.2d Torts, § 413; see *Aceves* v. *Regal Pale Brewing Co* (1979) 24 Cal.3d 508-509 [156 Cal.Rptr. 41, 595 P.2d 619]; *Woolen* v. *Aerojet General Corp.* (1962) 57 Cal.2d 407, 410 [20 Cal.Rptr. 12, 369 P.2d 708]; *Addison* v. *Susanville Lumber, Inc.* (1975) 47 Cal.App.3d 394, 398-399 [120 Cal.Rptr. 737]; *Stilson* v. *Moulton-Niguel Water Dist.* (1971) 21 Cal.App.3d 928, 938 [98 Cal.Rptr. 914].) Peculiar risk liability is vicarious when injury is caused "by the failure of the contractor to exercise reasonable care to take [special] precautions,

[4]In *Privette* the Supreme Court said: "The conclusion that peculiar risk is a form of vicarious liability is unaffected by the characterization of the doctrine as 'direct' liability in situations when the person hiring an independent contractor 'fails to provide in the contract that the contractor shall take [special] precautions.' (Rest.2d Torts, § 413; see *Aceves* v. *Regal Pale Brewing Co.* [1979] 24 Cal.3d [502] at p. 509 [156 Cal.Rptr. 41, 595 P.2d 619]; *Griesel* v. *Dart Industries, Inc.* (1979) 23 Cal.3d 578, 585-586 [153 Cal.Rptr. 213, 591 P.2d 503].) Irrespective of whether a contract of hire provides that special precautions be taken, a person who employs an independent contractor to perform dangerous work is subject to liability under the doctrine of peculiar risk. (Rest.2d Torts, § 416.) Thus, peculiar risk liability is *normally* premised on the broader rule of vicarious liability for the contractor's negligence. [Citations.]" (5 Cal.4th at p. 695, fn. 2, italics added.)

even though the employer has provided for such precautions in the contract or otherwise." (Rest.2d Torts, § 416; see *Van Arsdale* v. *Hollinger* (1968) 68 Cal.2d 245, 254 [66 Cal.Rptr. 20, 437 P.2d 508].)

■ It is plain from the discussion in *Privette* that the Supreme Court intended its holding to apply only in those situations where third party liability is vicarious rather than direct. Consequently, it is necessary to determine the basis for the jury's verdict in this case. The jury completed relevant portions of the special verdict form as follows:

"Question No. 1: Did the defendant Giannetta-Heinrich Construction Co. exercise reasonable care to keep the premises in a reasonably safe condition? [checked 'Yes']

"Question No. 2: Did the defendant Giannetta-Heinrich provide a reasonably safe place for the plaintiff to work? [checked 'Yes']

"Question No. 3: Was the work which Giannetta-Heinrich Construction Co. hired independent subcontractor Elmer Elia to perform likely to create a peculiar or special risk of bodily harm to others unless special precautions were taken? [checked 'Yes']

". . . . . . . . . . . . . . . . . . . . . . . .

"Question No. 4: Was reasonable care exercised to take special precautions to protect against the peculiar or special risk of bodily harm? [checked 'No']

". . . . . . . . . . . . . . . . . . . . . . . .

"Question No. 5: Was the conduct of the defendant Giannetta-Heinrich Construction Co. a legal cause of injury to plaintiff? [checked 'Yes']"

The remainder of the special verdict form concerned the amount of damages and the relative negligence of the parties.

■ There is no dispute the jury thereby found Giannetta responsible for Owens's injuries only on a theory of vicarious liability. In his supplemental brief, Owens concedes as much: "The special verdict form makes clear that the recovery was awarded based on the doctrine of peculiar risk which would have been precluded had the Supreme Court changed existing California law in the *Privette* case prior to the entry of judgment. The court's decision to award attorneys' fees was not based on whether the jury found liability on the theory of peculiar risk as opposed to direct negligence of the

employer (an alternative theory advanced by the plaintiff but rejected by the jury), but the fact that the recovery included a 'common fund' that was fully deducted from the jury's award. Therefore the *Privette* decision should have no bearing on the attorney fee issue or any other issue raised by the parties or the court."

Owens's concluding argument makes no sense. He was entitled to recover attorney fees only as an offset against a lien on the judgment. It follows that without a judgment there can be no lien from which to recover the fees.[5] If Owens was precluded by *Privette* from recovering damages from Giannetta, he necessarily was also precluded from recouping his attorney fees. Thus, the only question remaining to be resolved is whether *Privette* should be applied retroactively to foreclose Owens's recovery in this case.[6] The parties' supplemental briefs provide little assistance in this regard.

## 2. *Retroactivity.*

■ Judicial decisions, particularly those in tort cases, are generally applied retroactively. (*Newman* v. *Emerson Radio Corp.* (1989) 48 Cal.3d 973, 981-982 [258 Cal.Rptr. 592, 772 P.2d 1059].) However, the rule is not absolute and exceptions have been recognized based upon considerations of fairness, foreseeability and public policy. Among factors relevant to the analysis are the extent and reasonableness of reliance on the former rule, the

[5]Owens would not have been entitled to recover his attorney fees in any event. When an injured employee recovers damages from a third party, the employer (or its workers' compensation carrier) is entitled to reimbursement from the judgment for benefits it has paid to the employee. (§ 3852.) The employer may obtain reimbursement by, among other things, applying for a lien against the judgment. (§ 3856.) However, reimbursement is limited to the amount by which the benefits it has paid exceed the employer's proportionate share of fault for the employee's injuries. (*DaFonte* v. *Up-Right, Inc.* (1992) 2 Cal.4th 593, 599 [7 Cal.Rptr.2d 238, 828 P.2d 140]; *Aceves* v. *Regal Pale Brewing Co., supra,* 24 Cal.3d at pp. 512-513; *Associated Construction & Engineering Co.* v. *Workers' Comp. Appeals Bd.* (1978) 22 Cal.3d 829, 842 [150 Cal.Rptr. 888, 587 P.2d 684].) Here, the jury found Elia 20 percent at fault for Owens's economic injuries totaling $451,650.38. Thus Elia's proportionate share of liability ($90,330.76) exceeded the amount it had paid to Owens in workers' compensation benefits ($84,801.55). Consequently, Elia (or State Fund) was not entitled to reimbursement and its application for a lien should have been denied. This being the case, Elia received no benefit from Owens's recovery from which it could be required to contribute to Owens's attorney fees. When it purchased the lien, Giannetta "stepped into the shoes" of Elia and assumed all the rights and obligations attendant to the lien. (*Hone* v. *Climatrol Industries, Inc.* (1976) 59 Cal.App.3d 513, 530 [130 Cal.Rptr. 770].)

[6]Owens also appears to argue in his supplemental briefing letter that application of *Privette* to this case is precluded by a settlement agreement which, he claims, limits the issues on appeal to attorney fees and the appropriate method for deducting the workers' compensation lien. In the absence of any additional argument or elaboration, however, his claim is rejected. (*People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 995-996 [262 Cal.Rptr. 141]; *People* v. *Callegri* (1984) 154 Cal.App.3d 856, 865 [202 Cal.Rptr. 109].)

purposes to be served by the new rule, and the effect of retroactivity on the administration of justice. (*Camper* v. *Workers' Comp. Appeals Bd.* (1992) 3 Cal.4th 679, 688 [12 Cal.Rptr.2d 101, 836 P.2d 888]; *Woods* v. *Young* (1991) 53 Cal.3d 315, 330 [279 Cal.Rptr. 613, 807 P.2d 455]; *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at pp. 983-992; *Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 153 [181 Cal.Rptr. 784, 642 P.2d 1305].)

■ Here, reliance by litigants on the former rule and the unforeseeability of change weigh in favor of prospective application. The Supreme Court first extended peculiar risk liability in favor of an independent contractor's employee in 1962 (*Woolen* v. *Aerojet General Corp., supra,* 57 Cal.2d at p. 407) and has approved application of the doctrine to that situation in several subsequent decisions. (See *Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 696.) Moreover, although such liability has been criticized and has not been imposed by the majority of other states (*id.* at pp. 698-699), the state of the law in California has not been such as to portend a change (cf. *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at pp. 986-987 [where a new rule applied retroactively involved an unsettled issue upon which the Supreme Court had not previously issued a definitive decision]; and *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287, 305 [250 Cal.Rptr. 116, 758 P.2d 58] [where a new rule applied only prospectively overruled a prior decision of the state's high court]).

However, retroactive application of *Privette* will not deny an injured employee a day in court or deprive him or her entirely of a remedy. (See *Newman* v. *Emerson Radio Corp., supra,* 48 Cal.3d at pp. 990-991.) On the contrary, it will only foreclose recovery from a nonnegligent third party, thereby putting the employee of an independent contractor on the same footing as all other employees. The employee may still recover workers' compensation benefits as well as damages from a third party who contributed to his injuries through its own direct negligence.

The primary purpose of the rule enunciated in *Privette* is to correct an inequity which resulted from the exclusive remedy provisions of the workers' compensation system: the inability of an innocent third party held liable on a peculiar risk theory to be made whole by the party responsible for the injury. (*Privette* v. *Superior Court, supra,* 5 Cal.4th at p. 701.) This produces "the anomalous result that a nonnegligent person's liability for an injury is greater than that of the person whose negligence actually caused the injury." (*Id.* at p. 698.) It also exempts a single class of workers—those employed by an independent contractor—from the statutorily mandated limits of workers' compensation, and thereby grants them an unwarranted windfall. (*Id.* at pp. 699-700.) The purpose of eliminating these inequities favors retroactive application of *Privette*.

Finally, when a significant number of pending cases have been filed in reliance on the former rule, the new rule should not be applied retroactively if doing so would impose a substantial additional burden on the courts. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra*, 46 Cal.3d at p. 305; *Li* v. *Yellow Cab Co.* (1975) 13 Cal.3d 804, 829 [119 Cal.Rptr. 858, 532 P.2d 1226, 78 A.L.R.3d 393].) In the current situation, most pending cases are likely to seek recovery based on theories of both direct and vicarious liability. Further, those cases already tried are apt to have used a verdict form like that employed here which makes it possible to determine which of the theories was the basis for the jury's conclusion. Thus, it appears retroactive application of *Privette* would not seriously disrupt the administration of justice by requiring a significant number of retrials. (*Newman* v. *Emerson Radio Corp., supra*, 48 Cal.3d at pp. 991-992.)

These considerations, on balance, fail to provide a compelling reason to depart from the usual rule of retroactive application. Accordingly, since the jury found Giannetta liable to Owens under the doctrine of peculiar risk for injuries caused by Elia's negligence, *Privette* bars Owens's recovery. We therefore reverse the judgment. As the remaining issues presuppose a judgment in favor of Owens, we need not address the propriety of awarding attorney fees.

### DISPOSITION

The judgment is reversed. Appellant is awarded costs.

Martin, Acting P. J., and Vartabedian, J., concurred.

A petition for a rehearing was denied April 29, 1994, and the petition of appellant Ronald Owens for review by the Supreme Court was denied June 16, 1994. Mosk, J., was of the opinion that the petition should be granted.